<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| LISA NANCY BOUCHARD,<br><br>    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>    Defendant. | Civil No. 13-5283 (RMB)<br><br>**OPINION** |

**APPEARANCES:**

Jason L. Thompson
Leventhal Sutton & Gornstein
3800 Horizon Blvd., Ste. 101
Trevose, PA 19053
    Attorney for Plaintiff

Paul J. Fishman
Jeremy A. Linden
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorneys for Defendant

**BUMB,** UNITED STATES DISTRICT JUDGE:

Plaintiff Lisa Nancy Bouchard (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB").

For the reasons set forth below, the Court will vacate the decision and remand for further proceedings consistent with this Opinion.

## I.   **Background**

### a. Procedural Background

On January 29, 2010, Plaintiff filed an application for a period of disability and DIB, alleging a disability onset date of June 25, 2005. (Administrative Record "R." 29.) Her claim was denied initially on May 24, 2010 (id.) and upon reconsideration on June 23, 2010. (Id.) Thereafter, a written request for a hearing before an Administrative Law Judge ("ALJ") was filed on August 17, 2010. (Id.)

On October 4, 2011, Plaintiff, represented by attorney Nancy Becer, appeared at the hearing held before Honorable Judge Mark G. Barrett. (Id.) On October 21, 2011, the ALJ issued a decision denying Plaintiff's application (Id. at 29-35), which became the final judgment of the Commissioner of Social Security after the Appeals Council denied Plaintiff's request for review on April 26, 2013. (Plaintiff's Brief "Pl.'s Br." at 2.) Subsequently, Plaintiff commenced this action, requesting judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Pl.'s Br. at 1.)

### b. The ALJ's Decision

Applying the requisite five-step analysis, the ALJ concluded that Plaintiff met the insured status requirements of sections 216(i) and 223[1] of the Social Security Act through June 30, 2005 (the "date last insured"), and that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 25, 2005 through her date last insured, June 30, 2005. (R. 29, 31.) The ALJ also found that Plaintiff had a severe impairment, lumbar disc disease, and that she also alleged diverticulitis and depression during that time period. (Id. at 31.) As to these two impairments, however, the ALJ concluded that "they did not appear to last for more than 12 months or there is no evidence that they more than minimally impacted the claimant's ability to perform basic work activities during that period at issue." (Id. at 32.) In evaluating her depression, the ALJ concluded that she had no limitation in the functional areas of daily living, social functioning, and concentration, persistence or pace, and she experienced no episodes of decompensation of extended duration. (Id.) Accordingly, he found it was a nonsevere impairment. As to her diverticulitis, the ALJ noted that the record contained some

---

[1] Sections 216(i) and 223(d), of the Social Security Act define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

evidence of diverticulitis and abdominal pain but ultimately concluded it was not a severe impairment that lasted or could be expected to last longer than 12 months. (Id. at 31-32.)

The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id. at 32.) Furthermore, based on his findings, the ALJ determined that Plaintiff had the residual functional capacity to perform "the full range of light work except she is limited to standing or walking for 2 hours in an 8 hour day as defined in 20 CFR 404.1567(b)." (Id. at 32-33.) In making these findings, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the medical evidence of record." (Id. at 33.) In so holding, the ALJ noted the lack of treating source opinions relevant to the period at issue. (Id. at 34.)

After performing the RFC assessment, the ALJ determined that Plaintiff was unable to perform her past relevant work as an EKG technician. (Id.) Furthermore, the ALJ concluded that Plaintiff was a "younger individual" as of the date last insured, had at least a high school education and was able to

communicate in English. He further determined that transferability of job skills was immaterial to his determination under the Medical-Vocational Rules. (Id. at 34.) Then, considering Plaintiff's age (42 years old as of the date last insured (id. at 29)), education, work experience, and RFC as determined, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 35.) He then applied Medical-Vocational Rule 201.21 and found Plaintiff was not under a disability at any time from June 25, 2005, the alleged onset date, through June 30, 2005, the date last insured. (Id.) Thus, Plaintiff's application for DIB was denied.[2]

## II.  **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] In order to be entitled to DIB, a claimant must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a)(1)(A),(c)(1).

conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the

evidence is susceptible to "more than one rational

interpretation, the Commissioner's conclusion must be upheld."

Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med.

Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the

Commissioner "must adequately explain in the record his reason

for rejecting or discrediting competent evidence." Ogden v.

Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v.

Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision is
> supported by evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to
> determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); see also Guerrero v.

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The ALJ's responsibility is to analyze all the evidence

and to provide adequate explanations when disregarding portions

of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

7

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant

8

does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## III. **Analysis**

Plaintiff argues that the ALJ (1) erred at Step Two in failing to find that Plaintiff's diverticulitis was a severe impairment; (2) erred in calculating Plaintiff's RFC; and (3) erred by failing to consider Plaintiff's husband's statement as to Plaintiff's functional capabilities. The Court addresses each in turn.

a. The ALJ Did Not Err in Finding Plaintiff's
   Diverticulitis Was Not a Severe Impairment

Plaintiff first argues that the ALJ erred in failing to find that Plaintiff's diverticulitis was a severe impairment. At Step Two of the sequential analysis, the ALJ found that, while there was some of evidence of Plaintiff's diverticulitis prior to the date last insured, June 30, 2005, there was insufficient evidence to conclude that it either lasted for more than 12 months or that it more than minimally impacted the claimant's ability to perform basic work activities. (R. 31-32.) Plaintiff contends that the ALJ's finding regarding the duration was erroneous as a matter of law, and is not supported by substantial evidence. Plaintiff is incorrect.

At Step Two, an ALJ is directed to assess whether Plaintiff suffers from any medically determinable impairments, or combination thereof, which severely impair Plaintiff. 20 C.F.R. § 404.1520(c). In effect, the inquiry at Step Two functions as a de minimus screening device to dismiss unfounded claims. See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). A medically determinable impairment is one that,

> result[s] from anatomical, physiological, or
> psychological abnormalities which can be shown by
> medically acceptable clinical and laboratory
> diagnostic techniques.  A physical or mental
> impairment must be established by medical evidence
> consisting of signs, symptoms, and laboratory
> findings, not only by [Plaintiff's] statement of
> symptoms . . . .

20 C.F.R. §§ 404.1508, 416.908. According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." Newell, 347 F.3d at 546 (citations omitted); 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b)(1).

Furthermore, and contrary to Plaintiff's contention, Plaintiff's medically determinable impairment, or combination of impairments, must have "lasted or [could] be expected to last for a continuous period of not less than twelve months" in order for her to be considered disabled. 42 U.S.C. § 1382c(a)(3)(A). Unrelated yet severe impairments that do not individually meet the durational requirement of twelve months cannot be tacked on to reach the Act's durational requirement.[3] 20 C.F.R. §§ 404.1522(a), 416.922(a).

---

[3] 20 C.F.R. §§ 404.1522(a) provides in relevant part: "We cannot combine two or more unrelated severe impairments to meet the 12-month duration test.  If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months."

Because Plaintiff must only demonstrate more than a "slight abnormality" to satisfy the severity requirement at Step Two, an ALJ's decision to deny disability benefits at this step "should be reviewed with close scrutiny." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); see also Newell, 347 F.3d at 546 ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits at step two.") (citation omitted). If there exists a reasonable doubt as to the severity of Plaintiff's impairments, it is "to be resolved in favor of the claimant." Id. (footnote omitted).

Here, however, the ALJ did not deny benefits at Step Two. Rather, he concluded that the record contained insufficient evidence to classify Plaintiff's alleged diverticulitis[4] as a severe impairment that lasted, or would be expected to last, at least twelve months. This conclusion is supported by substantial evidence in the record. As the ALJ noted, the record contains some evidence of Plaintiff's diverticulitis, as well as a history of complaints of abdominal pain, going back to 2001. (See R. 31 (citing Ex. 1F, 7F).) For example, on February 5,

---

[4] "Diverticulitis refers to 'small, bulging sacs or pouches of the inner lining of the intestine (diverticulosis) that become inflamed or infected. Most often, these pouches are in the large intestine (colon).'" Sprowls v. Astrue, No. 11-0698, 2012 WL 832891, at *2 n.5 (W.D. Pa. March 12, 2012) (citation omitted).

2002, a CT was performed and revealed "several scattered sigmoid diverticula" suggestive of "very mild sigmoid diverticulitis." (Id. at 311.) However, the CT findings also found "no evidence of a peridiverticular collection," bowel obstruction, or free fluid. (Id.) Over a year later, on February 13, 2003, Plaintiff's treating physician, Dr. Andrea Hulse, recorded Plaintiff's complaints of stomach pain and diarrhea, but noted a little more than a week later that Plaintiff's "mild" diverticulitis was "resolved." (Id. at 352, 354.) Similarly, Plaintiff experienced intermittent abdominal pain for a few days in February 2004, but there is no evidence of any complaints or diagnoses of diverticulitis between February 2004 and June 2005. (Id. at 353; see also id. 347-48, 351, 353, 572-73.)

After more than a year without evidence of any diverticulitis complaints, on June 20, 2005, a few days prior to Plaintiff's alleged onset date, a CT showed "diverticulosis coli but no evidence for diverticulitis at this time." (Id. at 416.) The following day, Dr. Hulse reported that Plaintiff's diverticulitis was "stable." (Id. at 349.) Because Plaintiff's CT scan showed a fatty liver associated with abnormal liver tests, she was referred to Dr. Lee deLacy who saw Plaintiff on August 1, 2005. (See id. at 378.) Dr. deLacy noted that in July, Plaintiff had experienced a bout of severe abdominal pain and had been treated for presumptive diverticulitis and slowly

13

improved. (Id.) She was then hospitalized from October 2-8, 2005, and was diagnosed with diverticulitis, among other things. (Id. 375-76.) In January 2006, Plaintiff experienced another bout of abdominal pain and was referred for a surgical consult. (Id. at 345.)

Plaintiff testified that her problems with the diverticulitis ended with her bowel resection, which occurred in March 2006.[5] (See R. 74; see also id. at 219.) Although she learned that her "diverticula came back" in 2011, she testified that she had not been treated because she had not suffered any "flare-ups." (Id.)[6] Accordingly, while the medical evidence reflects a few diagnoses of diverticulosis or diverticulitis prior to the date last insured, the medical evidence reflects no bouts of diverticulitis from February 2004 to June 2005 and Plaintiff testified that her March 2006 surgery resolved her diverticulitis at least until 2011.

---

[5] Plaintiff testified that her diverticulitis did not clear up until 2007, but she later clarified that the 2007 surgery was to repair a hernia that was a complication of her 2006 surgery. (See R. 75.)

[6] Thus, while Plaintiff also argues that the ALJ's failure to consider her diverticulitis as a severe impairment is particularly harmful because he later fails to address any associated impairments, her own testimony reflects that she experienced symptoms only during flare-ups and that her 2006 surgery resolved any associated problems.

Regardless, even if the ALJ erred in concluding that Plaintiff's diverticulitis did not constitute a severe impairment, any such error is harmless because the ALJ concluded that Plaintiff's lumbar disc disease was a severe impairment. See Rosa v. Comm'r of Soc. Sec., No. 12–5176, 2013 WL 5322711, at *7 (D.N.J. Sept. 20, 2013) ("The Third Circuit has indicated that an ALJ's erroneous finding that some of a claimant's impairments are not severe at step two is harmless if the ALJ finds that the claimant has other severe impairments."). For this reason, remand would not be required.

### b. The ALJ Erred in Calculating Plaintiff's RFC

The ALJ concluded that Plaintiff had the RFC to perform the full range of light work except she is limited to standing or walking for two hours in an eight-hour day. Plaintiff contends that the ALJ erred in calculating her RFC because (i) he failed to accord appropriate weight to the opinion of Plaintiff's treating physician, Dr. Hulse;[7] (ii) he made a mistake of fact in interpreting the medical records of Plaintiff's physical therapist, Michael Reynolds ("PT Reynolds"); and (iii) his

---

[7] This Court construes Plaintiff's arguments regarding the ALJ's determinations with respect to her treating physician as a challenge to the ALJ's step four finding of Residual Functional Capacity. See Johnson v. Comm'r, 529 F.3d 198, 201 (3d Cir. 2008) (construing arguments regarding treating physician's opinions as a challenge to the ALJ's step four finding).

conclusion that Plaintiff could perform the full range of light work is contradicted by his finding that Plaintiff was limited to standing or walking for two hours in an eight-hour day.

A plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or another similar schedule. The RFC assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir. 1999) ("'[RFC]' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."). Ultimately, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

First, Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Plaintiff's treating physician, Dr. Hulse. Plaintiff correctly notes that an ALJ must accord "[t]reating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal

citations omitted). Here, Dr. Hulse submitted a letter in support of Plaintiff's appeal of the denial of DBI, in which Dr. Hulse summarized her treatment of Plaintiff's "many medical conditions" since October 1999. (R. 572-73.) Dr. Hulse's treatment records were also submitted to the ALJ, who considered them in rendering his decision. (See, e.g., id. at 31 (citing Ex. 7F).) After summarizing her treatment notes, Dr. Hulse states that "[s]ubjectively, the patient relates a long history of recurrent medical problems as outlined above which prohibit her from working. She relates a repeating pattern of taking a job only to find herself experiencing flare-ups of her back pain and/or a flare-up of her chronic abdominal pain requiring her to quit or risk being fired for medical reasons." (Id. at 573.) This letter, however, cannot be viewed as an opinion of Plaintiff's treating physician concerning her functional capabilities during the relevant time period. At best, it is a recitation of Dr. Hulse's treatment notes and relates Plaintiff's own complaints regarding her inability to work – evidence the ALJ considered in rendering his decision. Even if the Court were to construe this letter as reflecting Dr. Hulse's opinion that Plaintiff is unable to engage in sustained work on a regular and continuing basis, such an opinion is on an issue reserved to the Commissioner and, as such, cannot be afforded controlling weight. See, e.g., 20 C.F.R. § 404.1527(d)(1)

("Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. (1) Opinions that you are disabled. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Because the ALJ addressed the medical evidence of record, including evidence from Dr. Hulse's treatment notes, he did not err in failing to specifically address or give controlling weight to Dr. Hulse's July 23, 2010 letter.

Second, Plaintiff contends that the ALJ made a mistake of fact in interpreting the treatment notes of Plaintiff's physical therapist, PT Reynolds. In determining Plaintiff's RFC, the ALJ noted that

> "the claimant's treating physical therapist stated that the claimant has had no functional limitations and that she was able to bend, garden, sit for more than 1 hour and lift or hold her nephew and a laundry basket (Exhibit 2F, page 9). He found 'no functional deficits' and described [] her back condition at that time as a 'flare up.'"

(R. 34.) The Court agrees with Plaintiff that the ALJ's interpretation appears to be contradicted by PT Reynolds' notes. On July 11, 2005, Plaintiff saw PT Reynolds, complaining of a

18

recent flare-up of unknown origin in her back pain. (Id. at 260.) PT Reynolds recorded Plaintiff's chief complaints as "can't bend, sit[,] difficulty holding nephew/lifting, gardening/carrying laundry." (Id.) He also noted that her symptoms were exacerbated by prolonged sitting. In examining her, PT Reynolds noted no limitation in extension, but flexion of 27 cm, right lateral flex of 54 cm, and left lateral flex of 48 cm with associated "mild pain." (Id.) He further noted painful palpitation of lumbar paraspinals and piriformis. (Id. at 261.)

Of particular importance, PT Reynolds' notes contain a section titled "Functional Abilities," which permits the PT to record the current "Status" of various listed activities as well as the "Functional Goal/Time Frame." PT Reynolds recorded limitations in the areas of gardening, sitting, lifting, and carrying but no limitations in the areas of standing and sleeping. In providing further explanation, PT Reynolds wrote: "able to bend to ground to garden [without increased pain]"; "able to sit >1 hour to use computer, watch TV [without increased pain]"; "able to lift and hold nephew [without increased pain]"; and "able to carry laundry basket [without increased pain]." (Id.) These explanations start in the "Status" column and continue into the "Functional Goal/Time Frame" column of the form, with no distinction. Then, in the comments section

19

below this table, he wrote "PTI, no functional deficits, but has been careful during 'flareups.'"[8] (Id.)

It appears from the ALJ's decision that he may have considered PT Reynolds' explanations as setting forth Plaintiff's current functional status. However, a review of the entire form suggests that PT Reynolds recorded only the therapeutic goals on page two because he had already noted Plaintiff's functional abilities on the previous page of his treatment notes. Indeed, the notes that begin in the status column of page 2 directly contradict the chief complaints recorded on page 1, which suggests that the ALJ erred in interpreting PT Reynolds' treatment notes. (Compare R. 260, with id. at 261.) This conclusion is further supported by PT Reynolds' discharge report in which he writes that her primary goals of treatment are to bend to garden, sit for more than an hour, lift and hold her nephew, and carry the laundry. (Id. at 259.)

---

[8] The parties dispute the meaning of "PTI"; Plaintiff contends that it stands for prior to injury, while Defendant argues that it could mean physical therapist impression. The ALJ's opinion provides no explanation or interpretation of this acronym. Because the Court is remanding the matter for further consideration, the ALJ may address this issue at that time. It appears, however, that even if the ALJ adopts Plaintiff's interpretation of PTI, PT Reynolds' notes reflect that Plaintiff had nearly recovered from her injury within only a few weeks. (See R. 259.)

The impact of this apparent mistake of fact is clear. If the PT's comments reflect Plaintiff's functional status at the relevant time, they would not be inconsistent with the RFC that the ALJ ultimately assigned. If, however, as Plaintiff argues, these explanations were actually intended to describe Plaintiff's physical therapy goals (not her status), then they seem to suggest that Plaintiff was unable to complete those activities and thus the evidence contradicts the ALJ's assigned RFC. In the latter case, the ALJ must provide an explanation of his rejection of this seemingly contradictory probative evidence. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.") (citation omitted). This mistake of fact also impacts the ALJ's credibility determination. The ALJ held that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the medical evidence of record." (R. 33.) If the ALJ mistakenly interpreted the medical evidence, however, such a mistake of fact could have affected his assessment of Plaintiff's subjective complaints of pain and her associated subjective limitations. Accordingly, this matter

must be remanded to the ALJ for further consideration of PT Reynolds' notes.

The Court notes that the ALJ is free to reach the same conclusion regarding Plaintiff's RFC on remand. Plaintiff described her back injury as resulting in "intermittent [symptoms] that flareup at times" and seems to have explained that she needed to be "careful" during those flare-ups. (R. 260-61.) PT Reynolds noted that she exhibited "mild pain" with certain movements, but he opined that her rehabilitation potential was good with only six weeks of treatment. (Id.) The medical evidence suggests that Plaintiff attended physical therapy for only a few weeks before she missed appointments due to a death in the family. (Id. (showing a date of last visit in August 2005).) Even so, PT Reynolds recorded that, while no formal reassessment was possible due to Plaintiff's missed appointments, Plaintiff's treatment goals had been nearly achieved within that short time frame. (Id.)[9]  Thus, the ALJ may

---

[9] Because the Court is remanding this matter to allow the ALJ to reconsider the opinion of PT Reynolds, as well as its impact on the ALJ's credibility findings, the Court need not address Plaintiff's third argument regarding the ALJ's inconsistent RFC findings. The Court notes, however, that even if the ALJ erred in finding that Plaintiff could perform the full range of light work and instead should have found Plaintiff capable of performing sedentary work, Medical-Vocational Rule 201.21 still directs a finding of not disabled. 20 C.F.R. Part 404, Subpart P, App. 2; see also SSR 96-9p ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 'Occasionally' means occurring from very

still conclude that the medical evidence does not support
further functional limitations.

### c.  The ALJ Did Not Err In Failing to Specifically Address the Statement of Plaintiff's Husband

Finally, Plaintiff argues that the ALJ erred in failing to
assess the August 27, 2011 statement of Plaintiff's husband. Mr.
Bouchard submitted a letter summarizing Plaintiff's medical
conditions and related treatments from 1999 to 2011. (R. 219-
20.) In particular, he referenced her stomach and back pain
during the relevant period. He further explained that over the
last 13 years, "her quality of life greatly reduced" to the
point that she is "now" dependent upon Mr. Bouchard for even
simple tasks. He described at great length Plaintiff's
functional abilities in 2011: for example, she was unable to
lift herself out of bed, stand or sit for long periods, and
needed help with getting out of bed or the car and with walking
up stairs. She was also unable to go shopping without
assistance, do laundry, or walk her dogs. Mr. Bouchard noted in

---

little up to one- third of the time, and would generally total
no more than about 2 hours of an 8-hour workday. Sitting would
generally total about 6 hours of an 8-hour workday."); SSR 83-10
("In addition, RFC generally represents an exertional work
capability for all work at any functional level(s) below that
used in the table under consideration."); 20 C.F.R.
§ 404.1567(b) ("If someone can do light work, we determine that
he or she can also do sedentary work, unless there are
additional limiting factors such as loss of fine dexterity or
inability to sit for long periods of time.").

closing that her pain management program was not "currently" reducing her pain. (Id. at 220.)

As noted by the Commissioner, this letter sheds little light on Plaintiff's functional abilities during the relevant time period. Indeed, the portion of Mr. Bouchard's letter addressing the relevant time period merely parrots the medical records that the ALJ addressed and notes that Plaintiff experienced back and stomach pain, which is not disputed. But Mr. Bouchard's statement does not conflict with the ALJ's analysis. While the ALJ must "explicitly" weigh all relevant, probative and available evidence, Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979), it is clear that the ALJ need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). Only where the ALJ rejects conflicting probative evidence must the ALJ explain his findings and the reasoning for his conclusions. Walker v. Comm'r of Soc. Sec., 61 F. App'x 787, 788–89 (3d Cir. 2003). Because Mr. Bouchard's letter provides no description of Plaintiff's functional capacity during the relevant time, the ALJ did not err in failing to explicitly address it. See, e.g., Davis v. Colvin, No. 12-4039, 2014 WL 641350, at *10-11 (E.D. Pa. Feb. 19, 2014) (finding no error where husband's testimony was "superfluous" and the ALJ adequately addressed the medical evidence as well as plaintiff's own testimony); cf. Ding v.

24

Colvin, No. 12-1835, 2014 WL 1315386, at *23 (M.D. Pa. March 28, 2014) (finding ALJ erred in failing to consider corroborating statements submitted by plaintiff's mother).

## IV.   Conclusion

In sum, because there remains a material question as to whether the ALJ made a mistake of fact in interpreting the treatment notes of Plaintiff's physical therapist, which may ultimately impact the validity of the RFC as well as the ALJ's credibility determination, this matter must be remanded for further proceedings.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: December 11, 2014